**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CAR CHARGING GROUP, INC. a Nevada Corporation and 350 HOLDINGS, LLC, a Florida limited liability company | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 13 CV 03124 |
| v. | ) ) | Judge Elaine E. Bucklo |
| JNS HOLDING CORPORATION, a Delaware Corporation, and JNS POWER & CONTROL SYSTEMS, INC., an Illinois Corporation | ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| JNS POWER & CONTROL SYSTEMS, INC., an Illinois Corporation, | ) ) ) | Case No. 13 CV 04020 |
| Plaintiff, | ) ) | Reassigned for relatedness to |
| v. | ) ) | Judge Elaine E. Bucklo |
| 350 GREEN, LLC, a Virginia limited liability company, | ) ) ) ) | |
| Defendant. | ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS CAR CHARGING GROUP, INC.'S COMPLAINT**

JNS Holding Corporation ("JNS Holding") and JNS Power & Control Systems, Inc. ("JNS Power") (collectively, "JNS"), by and through their attorneys, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully submits this Reply in support of their Motion to Dismiss Car Charging Group, Inc.'s and 350 Holdings, LLC's (collectively, "CCGI") Amended Complaint (13cv3124, Dkt. no. 16).

**PROCEDURAL BACKGROUND**

On May 31, 2013, JNS moved to dismiss the complaint filed by CCGI and 350 Holdings (Dkt. no. 1) on the grounds: (1) this entire action is barred by the doctrine of *res judicata;* (2) because CCGI and 350 Holdings lacks standing to seek declaratory relief in Count II with respect to a contract to which they were not a party, the April 17, 2013 Asset Purchase Agreement between 350 Green, LLC and JNS Power (the "APA"); and (3) that Count II should be dismissed based on Plaintiffs' failure to join 350 Green, LLC as a necessary party under Rule 19 of the Federal Rules of Civil Procedure.

On June 10, 2013, CCGI and 350 Holdings sought leave to file an amended complaint adding 350 Green, LLC ("350 Green") as an additional plaintiff (Dkt. no. 18), and on June 25, 2013, sought leave to file a corrected Amended Complaint, which included additional allegations concerning the relationship between CCGI, 350 Holdings and 350 Green. (Dkt. no. 29). On June 26, 2013, this Court granted Plaintiffs' motions to file the Amended Complaint and Corrected Amended Complaint but allowed the previously set briefing schedule for JNS's motion to dismiss the original complaint to stand. (Dkt. no. 31). Accordingly, this reply addresses the corrected Amended Complaint filed June 26, 2013, (Dkt. no. 32).

**ARGUMENT**

In its response, CCGI first argues that the April 23, 2013 dismissal of its action against JNS Holdings and 350 Green in the Southern District of New York was not a dismissal with prejudice of its current claims against JNS. CCGI, however, misquotes the District Court's order and ignores the law governing *res judicata* in this Circuit. Second, CCGI attempts to avoid the effect of the *res judicata* doctrine by attempting to narrowly construe its dispute with JNS as set forth in the New York action, and by suggesting that its claims survive as to JNS Power. Here, the doctrine of *res judicata* applies to bar all these new claims; both against JNS Holdings,

named in the New York action, and JNS Power, a wholly-owned subsidiary that could have been named by CCGI in the New York action, but was not.

CCGI's corrected Amended Complaint ("AC") does at least address the failure to name a necessary party by adding 350 Green as a plaintiff. But, the new complaint does not cure the Rule 12(b)(6) ground raised by JNS with respect to Count II, the claim for declaratory relief. The fact that CCGI allegedly now owns or controls 350 Green does not provide an adequate basis to give either CCGI or 350 Holdings standing to seek declaratory relief with respect to a contract between JNS Power and 350 Green, which is still a separate corporation that remains a going concern.

Finally, the addition of 350 Green as a separate plaintiff, seeking relief for both tortious interference of a contractual relationship and declaratory relief to have a contract it entered into declared void, does not cure all of the pleading deficiencies in the complaint. As currently drafted, Count I of the Amended Complaint does not state a claim by 350 Green for tortious interference against JNS. For that reason alone, Count I the Amended Complaint should be dismissed as to 350 Green.

**I.  Plaintiffs' Claims Against JNS Are Barred Under The Doctrine Of *Res Judicata*.**

On April 23, 2013, Judge Jesse M. Furman, sitting in District Court for the Southern District of New York, entered an order dismissing the case of *Car Charging Group, Inc. , et al. v. 350 Green, LLC, et al.*, (SDNY Case. No. 13cv2389) ("SDNY Lawsuit"), in its entirety. The April 23, 2013 Order dismissed the SDNY Lawsuit, "without prejudice to the right to reopen the action within thirty (30) days if the settlement is not consummated." (SDNY Case. No. 13cv2389, Dkt. no. 30). Two days later, Plaintiffs filed the instant complaint seeking recovery under claims that were stated or could have been stated in the SDNY Lawsuit. (Dkt. no. 1). All such claims are barred by the doctrine of *res judicata* and should be dismissed with prejudice.

3

### A. The Southern District Of New York's Order Dismissed The Previous CCGI Complaint With Prejudice As To JNS.

Judge Furman did not dismiss the SDNY Lawsuit "without prejudice, with the right to reopen within thirty (30) days if the settlement was not consummated," as mis-quoted by CCGI in its response. (Dkt. no. 30, p. 7). CCGI has added the additional comma in its Response in an attempt to obscure the terms of the order. Judge Furman's April 23 order clearly states, "It is hereby ORDERED that the above-titled action be and is hereby dismissed and discontinued without costs, and without prejudice to the right to reopen the action within thirty (30) days if the settlement is not consummated." (Dkt. no. 16, ex. B). No second comma. CCGI glosses over the specific language of Judge Furman's Order so that it can argue that the SDNY Lawsuit was not fully and finally dismissed thirty (30) days after April 23, 2013. (Resp., Dkt. no. 30, p. 7). The case was not dismissed *without prejudice* generally, as CCGI now suggests to this Court by misrepresenting the placement of a comma. Rather, the dismissal was without prejudice subject only to "the right to reopen the action within thirty (30) days if the settlement is not consummated."

A dismissal with leave to reinstate becomes a final order of dismissal when the plaintiff chooses not move to reinstate within the time provided in the order. *Parisi v. Cooper*, 961 F. Supp. 1247 (N.D. Ill. 1997) (Judge Shadur finding "dismissal with leave to reinstate is not a final order until the time specified for reinstatement has expired"). In *Parisi*, Judge Shadur noted, "this Court's regular practice of expressly providing that the failure to file a timely motion to reinstate will cause the dismissal order immediately to become final." *Id*. at 1248. Thus, as of May 23, 2013, Judge Furman's dismissal of the SDNY Lawsuit was a final dismissal.

4

CCGI also attempts to factually distinguish the case of *Kaplan v. Zenner*, 956 F.2d 149, 152 (7th Cir. 1992), relied on by JNS, noting "the Appellate Court reluctantly vacated the district court's dismissal." (Dkt. no. 30, Resp. p. 8). CCGI, however, misstates the Seventh Circuit's holding. The Seventh Circuit vacated the dismissal of the Rule 11 motion for sanctions only. *Id.* The Seventh Circuit neither vacated the dismissal of the underlying complaint nor found that the dismissal pursuant to settlement was not final and with prejudice after the plaintiff chose not to move to reinstate during the period allowed by the district court. *Id.* at 151. Accordingly, once the period provided for reinstatement of a case dismissed pursuant to settlement passes, without plaintiff filing a motion for reinstatement, the order of dismissal becomes final.

Curiously, in complete disregard of Seventh Circuit precedent, CCGI argues that dismissal pursuant to a settlement is not a final decision on the merits, subject to the doctrine of *res judicata*. (Resp., Dkt. no. 30, p. 8). As cited in JNS's memorandum, "*Res judicata* applies even if the dismissal was the result of settlement or compromise." *Torres v. Rebarchak*, 814 F.2d 1219, 1223 (7th Cir. 1987). CCGI fails to refute this well-settled principal, that a voluntary dismissal, such as the one CCGI proposed to the SDNY Court and which formed the basis of the dismissal order, "is a final judgment that is entitled to *res judicata* effect." *4901 Corp. v. Town of Cicero*, 220 F. 3d 522, 529 (7th Cir. 2000). Moreover, the Seventh Circuit has repeatedly found that even if a court dismisses claims "without prejudice," the determination of "finality" is based on whether the district court was finished with the case. *See, e.g., Czarnicki v. City of Chicago*, 633 F.3d 545, 549 (7th Cir. 2011) cert denied, 132 S.Ct. 241 (2011). There can be no question that after May 23, 2013, the Southern District of New York was finished with the SDNY lawsuit and that CCGI could not re-file this action in that court.

**B.     JNS Holdings Is in Privity with JNS Power & Control For Purposes of Preclusion of CCGI's Claims In This Case.**

"Strict identity of the parties is not necessary to achieve privity… In order for privity to apply, the parties must be so closely aligned that they represent the same legal interest." *Little v. Tapscott*, 01 C 9738, 2002 WL 1632519 (N.D. Ill. July 23, 2002). JNS Holdings, the parent corporation, and JNS Power, a wholly-owned subsidiary, are in privity for purposes of *res judicata*. "The Seventh Circuit has also found that a corporation and its subsidiaries are in privity for *res judicata* purposes." *Janusz v. Fasco Indus., Inc.*, 97 C 7976, 1999 WL 162793 (N.D. Ill. Mar. 12, 1999). Therefore, "there is an identity of parties (directly or through privity of interest)," (*Groesch v. City of Springfield, Ill.*, 635 F.3d 1020, 1029 (7th Cir. 2011)), such that CCGI is barred from restating any claims made or which could have been made against JNS Holdings or JNS Power in the SDNY Lawsuit.

Here, the SDNY Complaint and the corrected Amended Complaint make it clear that CCGI was fully aware of negotiations between 350 Green and JNS at the time the SDNY Lawsuit was filed and was aware of the April 17, 2013 APA between 350 Green and JNS Power before CCGI settled its claims against 350 Green. (SDNY Lawsuit, Dkt. no. 16, Ex. A, ¶¶ 80-89); (Dkt. no. 32, ¶¶ 47, 57-63). In fact, CCGI concedes in this case that the April 22, 2013 revisions of the Exchange Agreement were required because of 350 Green's decision to enter into the APA. (Dkt. no. 32, ¶ 62). Thus, the record establishes that CCGI knew of and could have brought a claim against JNS Power separately in the SDNY Lawsuit, but chose not to.

**C.     Any Claims Plaintiffs Could Have Raised In The SDNY Lawsuit Are Barred.**

In responding, CCGI also attempts to argue that the claims stated in the SDNY Lawsuit differ from the claims in the instant lawsuit such that *res judicata* should not apply to its tort claim here, as CCGI argues the APA had not been entered into prior to the initiation of the

SDNY Lawsuit. (Resp., Dkt. no. 30, p. 10). "Res judicata bars not only those issues which were actually decided in a prior suit, *but also all other issues which could have been raise in that action.*" *Cole v. Bd. of Trustees of Univ. of Ill.*, 497 F.3d 770, 772 (7th Cir. 2007) (emphasis added). Thus, to the extent the tort claim here could have been raised in the SDNY Lawsuit, it is barred.

CCGI conveniently ignores the simple fact that it was aware of the APA before it settled with 350 Green and prior to the dismissal of the SDNY Lawsuit on April 23, 2013, which establishes that CCGI had an opportunity to pursue claims against JNS based on the APA. (Dkt. no. 32, ¶62). Dismissal of subsequent claims based on the doctrine of *res judicata* is appropriate when the "plaintiff had a full and fair opportunity to litigate his claim at the state court level, but he chose not to do so." *Williams v. Bierman*, 14 F.3d 605 (7th Cir. 1993). On April 22, 2013, CCGI knew that the APA had been executed by 350 Green and JNS, yet CCGI allowed the court to dismiss its claims against all parties, including JNS. CCGI's failure to preserve its claims against JNS bars it from pursuing similar claims in this action.

The facts which form the nexus of both the tort claim in the SDNY Lawsuit and the tort claim here have been re-stated nearly verbatim by CCGI. These facts should be dispositive that there is sufficient identity of the causes of action to warrant dismissal with prejudice. "Regardless of how the second cause of action is framed, the question is whether the facts upon which the second suit is based were available to the plaintiff at the time of the first suit." *Junction Solutions, LLC v. MBS Dev, Inc.*, 06 C 1632, 2007 WL 4233995 (N.D. Ill. Nov. 21, 2007). Clearly, all the relevant facts which form the basis for CCGI's instant tort claim were available to CCGI while the SDNY Lawsuit remained pending and most of them were specifically asserted by CCGI against 350 Green and JNS in the SDNY Lawsuit.

7

Moreover, there is identity of causes of action with the declaratory relief sought by CCGI, in Count II, and the facts alleged in the SDNY Lawsuit. "There is identity of causes of action if the claim emerges from the same core of operative facts as that earlier action." *Cole*, 497 F.3d at 772. The negotiations and dealings between 350 Green and JNS were central to the claims of CCGI in the SDNY Lawsuit. The APA, finalized and entered into between 350 Green and JNS on April 17, 2013, resulted from the negotiations and dealings CCGI complained of and were the very the actions CCGI sought to enjoin in the SDNY Lawsuit. Based on a comparison of the two complaints, there can be no question that CCGI's declaratory judgment claim in this case "emerges from the same core of operative facts," as its claims in the SDNY Lawsuit. Accordingly, all of CCGI's claims against JNS Holdings and JNS Power should be dismissed by this Court with prejudice as barred by the doctrine of *res judicata*.

## II. CCGI Does Not Gain Standing to Assert the Declaratory Claim By Its Indirect Ownership of 350 Green or 350 Holdings Direct Ownership.

CCGI argues that the allegations contained in corrected AC (Dkt. no. 32), create sufficient basis for this Court to find CCGI has standing to seek declaratory judgment regarding the APA. (Resp., Dkt. no. 30, pp. 10-12). These new allegations state that 350 Green no longer has any employees and is not soliciting new business. (Dkt. no. 32, ¶44). As alleged, CCGI, the ultimate parent corporation, is in the process of transferring 350 Green's assets and contracts into CCGI and its subsidiaries. (Dkt. no. 32, ¶45). Notably, "the ultimate goal is to cease 350 Green's operations and have said operations ultimately assumed by CCGI or one of its related entities." (Dkt. no. 32, ¶46). These additional facts alleged in the corrected AC have not sufficiently changed the relationship between and among the Plaintiffs for the Court to disregard 350 Green, the corporation that alone has standing to pursue its own claims. The allegations in

the AC demonstrate that 350 Green remains a going concern, alleging that currently "350 Green is a Virginia limited liability company." (Dkt. no. 32, ¶4).

As a valid, ongoing corporation, 350 Green alone possesses standing to seek declaratory judgment concerning the APA. Nothing in CCGI's AC overcomes the fact that neither CCGI nor 350 Holdings are proper parties in interest to bring the declaratory judgment claim against JNS concerning a contract between JNS and 350 Green. *See Am. Gen. Fin. Servs. of Illinois, Inc. v. Riverside Mortgage Co., Inc.*, 02 C 3518, 2005 WL 1211583 (N.D. Ill. May 19, 2005) (finding that a plaintiff who failed to provide evidence of transfer or purchase of a contract "has not demonstrated a right to seek contractual or declaratory relief pursuant to the contract"). As alleged, 350 Green still owns or controls its contracts and assets. So long as CCGI is "in the process" and has not completed its "ultimate goal," of taking over 350 Green's operations, CCGI has cannot be said to have assumed the rights and benefits under 350 Green's contracts.

Among the very contracts "CCGI is in the process of moving," is the APA, which is central to both this case and JNS's claims in the case of *JNS Power & Control Systems v. 350 Green* (Case No. 13cv4020). (Dkt. no. 32, ¶45). "Corporate acquisition of stock of a contracting party does not of itself cause the purchaser to acquire the new subsidiary's contractual rights or duties, for the subsidiary's continued corporate existence causes it and it alone to remain responsible for its own contractual undertakings." *Waste Management of Ill. v. Star Recycling, Inc.*, No. 95C1678, 1995 WL 137048, *1 (N.D. Ill. Mar. 24, 1995). Until such time as the Court has reached a final determination on the both cases, and particularly whether 350 Green should be ordered to perform under the APA, CCGI cannot be said to have fully absorbed or liquidated 350 Green such that "it alone remains responsible for its own contractual undertakings." *Id.*

"A parent corporation cannot create a subsidiary and then ignore its separate corporate existence whenever it would be advantageous to the parent. Numerous courts have dismissed

9

claims brought by corporations when the clams actually belong to a subsidiary or an affiliated corporation." *Shapo v. Underwriters Mgmt. Corp.*, 98 C 4084, 2002 WL 31155059 (N.D. Ill. Sept. 27, 2002). This is exactly what CCGI attempts here. There is no dispute that 350 Green may now be considered a subsidiary of CCGI and/or 350 Holdings. But so long as 350 Green, the corporate entity, has not been liquidated, dissolved or otherwise eliminated in a winding-down process, any claims related to the APA and its validity or enforceability remain claims of 350 Green.[1] Accordingly, CCGI and 350 Holding's claim for declaratory judgment (Count II) should be dismissed with prejudice.

### III. The Amended Complaint Does Not State a Claim By 350 Green for Tortious Interference Against JNS.

As alleged in the AC, 350 Green, along with CCGI and 350 Holdings, now also seeks damages from JNS for tortious interference with contractual relations. The contractual relations JNS has allegedly interfered with was the Equity Exchange Agreement. (Dkt. no. 32, ¶¶50-64). As alleged, however, 350 Green wholly fails to establish sufficient facts to support a claim for tortious interference with contractual relations.[2]

"The elements of interference with contractual relations include: (1) the existence of a valid and enforceable contract between the plaintiff and a third-party; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) the subsequent breach by the third-party caused by the defendant's conduct;

---

[1] The relationship between JNS Holdings and JNS Power is clearly defined as that of parent and subsidiary – even as alleged in the corrected Amended Complaint. (Dkt. no. 32, ¶6). Therefore, JNS Holdings and JNS Power have an established identity of common interests warranting application of the doctrine of *res judicata*. Conversely, and under the legal analysis of whether proper standing exists to assert a claim, the relationship between CCGI, 350 Holdings, and 350 Green is evolving and in flux. CCGI and 350 Holdings are in the process of winding-down or liquidating 350 Green, such that 350 Green will, at some point, cease to exist. The relationship between those corporations is unsettled making it impossible to reach a determination that privity exists via an assignment of the rights and assets of 350 Green to establish the requisite standing to seek to declare the APA void. Especially, as 350 Green remains a viable corporation. *See* (Dkt. no. 32, ¶5)

[2] Since the Court has granted CCGI's motion to amend adding 350 Green as a plaintiff, JNS has raised this additional basis to dismiss Count I of the Amended Complaint with respect to 350 Green, pursuant to Rule 12(b)(6).

and (5) damage to the plaintiff." *Indiana Ins. Co. v. Meeker-Magner Ins. Brokers & Consultants, Inc.*, 594 F. Supp. 262, 264 (N.D. Ill. 1984); *see also Douglas Theater Corp. v. Chicago Title and Trust Co.*, 681 N.E. 2d 564, 567 (Ill. App. Ct. 1997). 350 Green fails to allege facts which would demonstrate the third, fourth, and fifth elements of tortious interference, which warrants dismissal of 350 Greens claim for tortious interference, Count I.

Initially and most importantly, 350 Green fails to allege that there was any breach of contract by any party. The failure to allege a breach of contract, as required by the fourth element, is fatal to a claim of tortious interference. "Plaintiff must prove the existence of a valid contract … and a breach thereof." *Maine v. Standard & Poor's Corp.*, 88 C 4027, 1988 WL 135455, at *3 (N.D. Ill. Dec. 13, 1988). The Plaintiffs allege in the AC that "CCGI and 350 Holdings and 350 Green entered into subsequent settlement negotiations, which culminated on April 22, 2013 with CCGI and 350 Holdings and 350 Green closing the Transaction as contemplated under the Exchange Agreement." (Dkt. no. 32, ¶39). Therefore, according to the very allegations of 350 Green, an agreement was formed, not breached. There are no allegations that the original Equity Exchange Agreement was breached by any party. *See* (Dkt. no. 32). Moreover, 350 Green fails to allege facts which would support the third element of a tortious interference claim – an intentional and unjustified inducement by JNS of a breach of contract by 350 Green or any other party. Without a breach of contract, there surely was no inducement of a breach.

Finally, 350 Green makes no allegations of any damages suffered, specifically by 350 Green, as a result of JNS's alleged tortious interference. Without damages resulting from JNS's alleged tortious actions, 350 Green cannot recover under a claim for tortious interference with contractual relations. Accordingly, the claim for tortious interference with contractual relations, as alleged by 350 Green in Count I, should be dismissed.

WHEREFORE, defendants, JNS Holding Corporation and JNS Power & Control Systems, Inc., respectfully request that the court grant their motion to dismiss, enter an order: (1) dismissing Count I of the corrected Amended Complaint as to all Plaintiffs; (2) dismissing Count II as to CCGI and 350 Holdings; and (3) grant such other relief as the court deems just and appropriate.

      Respectfully submitted,

      JNS Holding Corp. and JNS Power & Control Systems, Inc.,

      By:    s/ Evan J. Haim
            One of Their Attorneys

KELLY MCCLOSKEY CHERF
PATRICK E. DEADY
EVAN J. HAIM
HOGAN MARREN, LTD.
321 N. Clark Street, Suite 1301
Chicago, Illinois 60654
(312) 946-1800

## CERTIFICATE OF SERVICE

      I, Evan J. Haim, hereby certify that on this 3rd day of July 2013, and in accordance with the General Order on Electronic Case Filing (ECF), I served the **Defendants' Reply Brief in Support of Its Motion to Dismiss Car Charging Group, Inc.'s Complaint,** upon the below-named individuals by electronic transmittal through the CM-ECF electronic filing system.

| | |
|---|---|
| Steven L. Baron | Michael I. Bernstein |
| Natalie A. Harris | The Bernstein Law Firm |
| Mandell Menkes LLC | 1688 Meridian Avenue, Suite 418 |
| One North Franklin Street, Suite #3600 | Miami Beach, Florida 33139 |
| Chicago, Illinois 60606 | Telephone: (305) 672-9544 |
| Telephone: (312) 251-1000 | Facsimile: (305) 672-4572 |
| Facsimile: (312) 251-1010 | e-mail: michael@bernstein-lawfirm.com |
| e-mail: sbaron@madellmenkes.com | |
| e-mail: nharris@mandellmenkes.com | |

                                                         /s/ Evan J. Haim